**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Gerardo ALDERETE–DERAS,
Defendant-Appellee.**

**No. 83–1312.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 1984.

Decided Sept. 20, 1984.

646

Donald B. Ayer, U.S. Atty., John W. Kennedy, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellant.

Sandra Gillies, Sacramento, Cal., for defendant-appellee.

*Hon. Owen M. Panner, United States District Judge for the District of Oregon, sitting by desig-

Before FLETCHER and CANBY, Circuit Judges, and PANNER,* District Judge.

FLETCHER, Circuit Judge:

The government charged Alderete with illegal entry after deportation in violation of 8 U.S.C. § 1326 (1982), a felony. The district court granted Alderete's motion to suppress evidence of his deportation. The court found Alderete's deportation unlawful because it was based on compelled testimony, in violation of his fifth amendment rights. The government appeals.

## FACTS

In 1981, Alderete was deported to Mexico as an alien who entered the United States illegally without inspection. *See* 8 U.S.C. § 1251(a)(2) (1982). At his deportation hearing, the Immigration Judge ("IJ") informed Alderete that he had the right to be represented by an attorney, and Alderete said that he did not want one. The IJ also informed Alderete that he could question witnesses and present a defense. He administered the oath to Alderete telling him to "take an oath to testify truthfully."

The IJ read each item in the charge and asked Alderete whether it was true. In response, Alderete admitted that he was not a citizen of the United States, that he was a citizen of Mexico, and that he had entered the country illegally without inspection. Alderete pled guilty to the charge and, when asked, said that he did not wish to appeal. This procedure was conducted in conformity with INS regulations, which require the IJ to have the alien "plead to the order to show cause by stating whether he admits or denies the factual allegations and his deportability under the charges contained therein." 8 C.F.R. § 242.16(b) (1984). If the IJ is satisfied that no issues of law or fact remain, deportability may be established on the basis of the alien's admissions. *Id.*

At his trial for illegal reentry in 1983, Alderete moved to suppress evidence of his

nation.

deportation, arguing that it was unlawful because it was based on statements made by Alderete in the hearing without a warning that he had the right to remain silent. The district court relied on cases holding that testimony compelled by an INS hearing examiner despite the alien's assertion of a fifth amendment privilege is inadmissible in the deportation hearing, citing *Valeros v. INS*, 387 F.2d 921 (7th Cir.1967), and dicta in *Chavez-Raya v. INS*, 519 F.2d 397, 401 n. 6 (7th Cir.1975). The district court could find no meaningful distinction between a case where defendant asserts the privilege and is wrongfully compelled to testify and a case such as this where defendant is never informed of the privilege but is instead asked by the Immigration Judge, "Would you please stand and take an oath to testify truthfully?"

## DISCUSSION

■ This court has held that because deportation hearings must conform to the traditional standards of fairness encompassed in due process, an alien's involuntary statements cannot be used against him in a deportation hearing. *See Choy v. Barber*, 279 F.2d 642, 647 (9th Cir.1960) (admission made after seven hours of interrogation and threats of deportation or prosecution could "no more be used as a basis for deportation than for conviction of a crime"). *See also Cuevas-Ortega v. INS*, 588 F.2d 1274, 1278 (9th Cir.1979) (alien's statements to immigration officer were not involuntary, absent any showing of "coercion, duress, or improper action on the part of the immigration officer"). However, this court has not addressed the issue presented here—whether a statement is inadmissible because an immigration judge required the alien to make it without warning him that he has the right to refuse to answer incriminating questions.[1]

■ The accused in a deportation case does not enjoy the same rights as the accused in a criminal case. The fifth amendment states only that no person "shall be compelled in any criminal case to be a witness against himself." A deportation hearing is a civil proceeding. *Trias-Hernandez v. INS*, 528 F.2d 366, 368 (9th Cir. 1975). Although an alien may assert his fifth amendment right to refuse to answer questions in a deportation hearing if the answers would incriminate him on a criminal matter, *see Wall v. INS*, 722 F.2d 1442, 1443 (9th Cir.1984), his refusal to testify may form the basis of inferences against him in the deportation proceeding. *See Bilokumsky v. Tod*, 263 U.S. 149, 154, 44 S.Ct. 54, 56, 68 L.Ed. 221 (1923); *Cabral-Avila v. INS*, 589 F.2d 957, 959 (9th Cir. 1978), cert. denied, 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979) ("Petitioners' decision to remain mute during the deportability phase of the hearing was an appropriate exercise of their Fifth Amendment privilege, but by doing so they do not shield themselves from the drawing of adverse inferences that they are not legally in this country").

In *Trias-Hernandez v. INS*, 528 F.2d 366 (9th Cir.1975), Trias argued that INS Form 1–213, reporting his admission of illegal entry, should have been excluded at his deportation hearing. Trias was not advised of his *Miranda* rights and, without counsel, made the admission to government agents. Without deciding whether Trias was in custody for fifth amendment purposes, we held that "the substantial distinctions between a deportation proceeding and a criminal trial make *Miranda* warnings inappropriate in the deportation context." 528 F.2d at 368.

Alderete contends that *Trias* does not control this case because that decision was based on the rule that presence of counsel is not required in deportation proceedings. Alderete argues only that he should have been told of his right to remain silent, not that he had the right to an attorney. The *Trias* court did rely in part on the lack of necessity of counsel as a distinction between deportation hearings and criminal

---

1. Alderete's admissions were incriminating in the fifth amendment sense because they could have subjected him to prosecution for violation of 8 U.S.C. § 1325 (1982) (entry of alien without inspection).

trials, citing *Lavoie v. INS*, 418 F.2d 732, 734 (9th Cir.1969), *cert. denied*, 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92 (1970), which held that the right to counsel during interrogation and other sixth amendment safeguards required in criminal cases by *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), were not applicable to deportation proceedings. However, the court also quoted the following language from the Seventh Circuit's decision in *Chavez-Raya v. INS*, 519 F.2d 397, 402 (7th Cir.1975):

> A principal purpose of the *Miranda* warnings is to permit the suspect to make an intelligent decision as to whether to answer the government agent's questions. [Citations omitted.] In deportation proceedings, however—in light of the alien's burden of proof, the requirement that the alien answer non-incriminating questions, the potential adverse consequences to the alien of remaining silent, and the fact that an alien's statement is admissible in the deportation hearing despite his lack of counsel at the preliminary interrogation—*Miranda* warnings would be not only inappropriate but could also serve to mislead the alien.

*Trias*, 528 F.2d at 368. *Miranda's* requirement that an attorney be present if the suspect wants one is designed to protect the privilege against self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 469–70, 86 S.Ct. 1602, 1625–26, 16 L.Ed.2d 694 (1966). Because both *Trias* and *Chavez* were concerned with the alien's decision whether to answer questions, their holdings that a failure to give *Miranda* warnings does not preclude use of the alien's statements in a deportation hearing are fully applicable to Alderete's claim that his statements were inadmissible absent a warning that he had the right to remain silent.

Absent a showing that Alderete's statements were the result of coercion, or some other improper behavior on the part of immigration officials, there was no basis for excluding them. *Cf. Choy v. Barber*, 279 F.2d 642, 647 (9th Cir.1960). Although a lack of *Miranda* warnings might render his statements inadmissible in a criminal prosecution for violation of the immigration laws, the failure to give *Miranda* warnings did not render them inadmissible in deportation proceedings. *See Chavez*, 519 F.2d at 402. Because the government sought only to prove the fact of Alderete's deportation,[2] and not to use the statements themselves as evidence in the criminal trial, the district court erred in granting Alderete's motion to suppress.

The order of the district court is REVERSED.

---

**2.** Our disposition of this issue makes it unnecessary for us to decide whether, as the government contends, the Supreme Court's decision in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), requires a change in this circuit's law, which allows an alien charged with illegal reentry to challenge collaterally in the criminal case the legality of his deportation. *See, e.g., United States v. Barraza-Leon,* 575 F.2d 218, 220 (9th Cir.1978).